**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 6:12-cv-01296-S-BCW** |
| **DONCO CONSTRUCTION SERVICES, LLC** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DONCO 3 CONSTRUCTION, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT DONCO 3'S SUGGESTIONS IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FOR ALTER EGO**

---

**Rick E. Temple, Esq.**
**Melinda B. Mullins, Paralegal**

**LAW OFFICES OF RICK E. TEMPLE, LLC**
**1358 E. Kingsley, Ste. D**
**Springfield, MO 65804**

**Telephone No.:** (417) 877-8988
**Facsimile No.:** (417) 877-8989

**DATED:** **August 27, 2015**

## TABLE OF CONTENTS

**Page**

Table of Contents........................................................................................ i

Table of Authorities .....................................................................................ii

A.     Overview ...................................................................................... 1

B.     Responses to Plaintiffs' Statement of Undisputed Facts ...................................... 2

C.     Material Facts Left Out by Plaintiffs' Statement of Undisputed Facts ................. 18

D.     Response to Plaintiffs' Legal Arguments ............................................................ 21

E.     Conclusion.................................................................................... 27

Certificate of Service ..................................................................................... 28

i

# TABLE OF AUTHORITIES

**Cases**

*Carpenters District Council of Kansas City Pension Fund v. JNL Construction* ............ 23
   *Co., Inc.*, 596 F.3d 491 (8th Cir. 2010)

*Greater Kansas City Laborers' Pension Fund v. Superior General* ................... 21, 22, 23
   *Contractors, Inc.*, 104 F.3d 1050 (8th Cir. 1997)

*Moore v. Advantage Office Services, Inc.*, 2011 WL 2193848 (D. Minn. 2011)............. 23

*Seipel v. John Heinlein Construction, Inc.*, 2009 WL 1405223 (D. Minn. 2009) ........... 23

*Trustees of the Graphic Communications International Union Upper Midwest* ............. 22
   *Local 1 M Health and Welfare Plan v. Bjorkedal*, 516 F.3d 719 (8th Cir. 2008)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:12-cv-01296-S-BCW |
| DONCO CONSTRUCTION SERVICES, LLC | ) ) ) | |
| and | ) ) | |
| DONCO 3 CONSTRUCTION, LLC, | ) ) | |
| Defendants. | ) | |

**DEFENDANT DONCO 3'S SUGGESTIONS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FOR ALTER EGO**

COMES NOW Defendant Donco 3 Construction, LLC ("Defendant Donco 3"), by and through its attorney of record, and hereby responds to Plaintiffs' Motion for Summary Judgment for Alter Ego, and the accompanying Memorandum in Support.

**A.      Overview –**

Plaintiffs are seeking summary judgment in a case that is fact-specific, with numerous disputed facts.  As outlined below, Defendant Donco 3 disputes many of the "Statement of Undisputed Facts" outlined by Plaintiffs in their Motion.  Further, Plaintiffs' Statement leaves out many additional facts which dispute Plaintiffs' request for summary judgment.  Accordingly, Defendant Donco 3 asserts that this case is clearly NOT a case for application of summary judgment, and Plaintiffs' Motion should be denied.

**B.     Responses to Plaintiffs' Statement of Undisputed Facts[1] –**

1.     Don York is the principal owner of Defendant Donco with final authority on all decisions relating to Defendant Donco's operations.  (See, Deposition of Donald York, Page 5: Line 25 through Page 7: Line 4, attached hereto as Plaintiffs' Exhibit "A").

**Response:**  Admitted.

2.     Alisha York is the daughter of Don York.  Alisha York was an employee of Defendants Donco and Defendant Donco 3.  (See, Deposition of Alisha York, Page 5: Lines 11-12; Page 99: Line 17 through Page 100: Line 12, attached hereto as Plaintiffs' Exhibit "B").

**Response:**  Admitted.

3.     Alisha York had mostly an administrative role as an employee of Defendant Donco. (See, Deposition of Alisha York, Page 5: Lines 11-24; Page 6: Line 4 through Page 8: Line 2, attached hereto as Plaintiffs' Exhibit "B").

**Response:**  Admitted.

---

[1]     Attached hereto, and incorporated herein by reference, are the following documents which will be cited by Defendant Donco 3, in addition to those documents attached to Plaintiffs' Memorandum in Support:

Exhibit D3 – 1:  Alisha York's corrected transcript of recorded July 20, 2010 meeting;
Exhibit D3 – 2:  Alisha York's corrected transcript of recorded July 23, 2010 discussion at job site;
Exhibit D3 – 3:  Alisha York's corrected transcript of recorded July 28, 2010 meeting;
Exhibit D3 – 4:   Complete Deposition of  Beverly York;
Exhibit D3 – 5:   Complete Deposition of Rachel York;
Exhibit D3 – 6:   Complete Deposition of Alisha York;
Exhibit D3 – 7:   Complete Deposition of Donald York;
Exhibit D3 – 8:   Complete Deposition of Glen Yutzy;
Exhibit D3 – 9:   Deposition Exhibit D3-5; and
Exhibit D3 – 10:  Affidavit of Alisha York.

2

4. Alisha York also briefly served as a project manager apprentice for Defendant Donco and as a project manager in training on Defendant Donco's Wonders of Wildlife project. (See, Deposition of Alisha York, Page 5: Line 15; Page 10: Lines 3-12, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Admitted.

5. Alisha York answered to Don York unless he specifically authorized her to act on behalf of Defendant Donco. (See, Deposition of Alisha York, Page 11: Lines 1-3; Page 14: Lines 6-10, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Admitted.

6. Alisha York is employed by Defendant Donco 3 in a very similar role to that she provided to Defendant Donco (as set forth in Paragraph 3) along with extra responsibility with respect to managing finances, project management, and decision-making. (See, Deposition of Alisha York, Page 28: Line 22 through Page 32: Line 23, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Beverly York, Page 24: Line 20 through Page 25: Line 10, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Disputed. Alisha York's role with Defendant Donco 3 is different and significantly greater than her previous role with Defendant Donco. Alisha York serves as Operating Manager of Defendant Donco 3, and works with the women owners to run and manage all aspects of the operations of Defendant Donco 3. (See, Deposition of Alisha York, at pp. 6, 30; Affidavit of Alisha York).

7. Beverly York is the wife of Don York. Beverly York was an employee of Defendant Donco and is an owner of Defendant Donco 3. (See, Deposition of Beverly York, Page 3: Lines 13-18; Page 4: Lines 14-25, attached hereto as Plaintiffs' Exhibit "C").

3

**Response:** Admitted.

8.    Beverly York had an administrative role as an employee of Defendant Donco.   (See, Deposition of Beverly York, Page 4: Line 14 through Page 6: Line 15, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Admitted.

9.    Beverly York answered to Don York unless he authorized her to act on behalf of Defendant Donco.    (See, Deposition of Beverly York, Page 5: Line 1 through Page 9: Line 14, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Admitted.

10.    Besides being an owner, Beverly York serves Defendant Donco 3 in an administrative role very similar to that of her role as an employee of Defendant Donco. (See, Deposition of Beverly York, Page 17: Line 8, attached hereto as Plaintiffs' Exhibit "C").

**Response:**    Disputed.   Beverly York is an owner/member and creditor of Defendant Donco 3.  Further, until just recently, Beverly York was involved in all aspects of the decision-making and operation of Defendant Donco 3.   (See Deposition of Beverly York, at pp. 10-11, 15, 18, 25-26; Deposition of Alisha York, at pp. 30-32; Affidavit of Alisha York).

11.    Rachel York is the wife of Aaron York and the daughter-in-law of Don York.   Rachel York was an employee of Defendant Donco and is an owner of Defendant Donco 3. (See, Deposition of Donald York, Page 38: Line 2, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Beverly York, Page 3: Lines 13-18; Page 4: Lines 14-25, attached hereto as Plaintiffs' Exhibit "C"; See, Deposition of Aaron York, Page 1: Lines 19-24, attached hereto as Plaintiffs' Exhibit "D").

4

**Response:** Admitted.

12.     Rachel York has no active role with Defendant Donco 3 outside of ownership.  (See, Deposition of Alisha York, Page 30: Lines 18-19, attached hereto as Plaintiffs' Exhibit "B").

**Response:**  Disputed.  Rachel York is also the owner of the building leased by Defendant Donco 3.  (See Deposition of Beverly York, at p. 16; Deposition of Rachel York, at pp. 6-7; Deposition of Alisha York, at p. 30; Affidavit of Alisha York).

13.     Aaron York is an employee of Defendant Donco 3 and was an employee of Defendant Donco.  (See, Deposition of Aaron York, Page 8: Lines 6-10; Page 9: Line 3 through Page 14: Line 4, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Admitted.

14.     For the majority of his employment with Defendant Donco, Aaron York was the main field superintendent.  (See, Deposition of Aaron York, Page 4: Lines 7-10; Page 8: Lines 6-10; Page 9: Line 3 through Page 14: Line 4, attached hereto as Plaintiffs' Exhibit "D").

**Response:**     Disputed.     During  certain  times  while  employed  by Defendant Donco, Aaron York served as Field Superintendent, under the supervision of his father and the owner of Defendant Donco, Don York.  (See Deposition of Aaron York, at pp. 8-9, 12).

15.     Aaron York is the main field superintendent for Defendant Donco 3 who oversees day-to-day field operations on Defendant Donco 3's concrete construction projects.  (See, Deposition of Alisha York, Page 30: Lines 14-15, attached hereto as Plaintiffs' Exhibit "B";   See, Deposition of Beverly York, Page 25: Lines 6-10; Page 26: Line 2 through Page 28: Line 22, attached hereto as Plaintiffs' Exhibit "C"; See,

5

Deposition of Aaron York, Page 39: Line 16 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Aaron York is currently employed as Field Superintendent for Defendant Donco 3, but did not serve in that role while still employed by Defendant Donco. Rather, upon formation, and before hiring Aaron York as an employee, Defendant Donco 3 contracted with Patty Porter for such project manager functions. (See Affidavit of Alisha York).

16. Defendant Donco 3 was formed by Beverly York and Rachel York. (See, Deposition of Beverly York, Page 10: Line 10 through Page 16: Line 3, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Admitted.

17. Defendant Donco 3 initially operated out of an office/business location which it did not own. (See, Deposition of Alisha York, Page 23: Lines 10-25, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Beverly York, Page 13: Line 3 through Page 14: Line 2, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Admitted, with the explanation that Defendant Donco 3 rented and paid rent for its initial business location. (See Affidavit of Alisha York).

18. When Defendant Donco 3 first began operations, it operated out of an office/business address that was the same as that of Defendant Donco. (See, Deposition of Alisha York, Page 23: Lines 10-25, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Beverly York, Page 13: Line 3 through Page 14: Line 2, attached hereto as Plaintiffs' Exhibit "C").

**Response:** Admitted, with the explanation that Defendant Donco 3 paid rent to the owners of the office/business building. (See Affidavit of Alisha York).

6

19.     At the time it was formed and/or operated, Defendant Donco 3 primarily subcontracted with Defendant Donco to perform all concrete construction work for which Defendant Donco 3 bid and was awarded a contract.  (See, Deposition of Alisha York, Page 46: Line 10 through Page 47: Line 19; Page 66: Lines 21-25, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Aaron York, Page 38: Lines 11-19, attached hereto as Plaintiffs' Exhibit "D").

**Response:**  Disputed.  For the first two (2) years of its operation, Defendant Donco 3 subcontracted with several companies, including Defendant Donco, to perform the construction work for which Defendant Donco 3 bid and was awarded a contract. (*See* Deposition of Alisha York, at pp. 40-47; Affidavit of Alisha York).

20.     Under the circumstances referred to in Paragraph 19, Defendant Donco 3 had no employees of its own, no work was ever performed by employees of Defendant Donco 3, and all of the concrete construction work performed on Defendant Donco 3's projects was performed by employees of Defendant Donco. (See, Deposition of Alisha York, Page 46: Line 10 through Page 47: Line 19; Page 66: Lines 21-25, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Aaron York, Page 38: Lines 11-19, attached hereto as Plaintiffs' Exhibit "D").

**Response:**  Disputed.  For the first two (2) years of its operation, Defendant Donco 3 subcontracted with several companies, including Defendant Donco, to perform the construction work for which Defendant Donco 3 bid and was awarded a contract. (See Deposition of Alisha York, at pp. 40-47; Affidavit of Alisha York).

21.     Under the circumstances referred to in Paragraphs 19 and 20, the equipment and tools used to complete concrete construction work on Defendant Donco 3's projects belonged to Defendant Donco, Defendant Donco's employees,

7

and/or Don York individually. (See, Deposition of Donald York, Page 67: Line 13 through Page 68: Line 14, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Aaron York, Page 37: Line 14 through Page 38: Line 19, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Defendant Donco 3 has obtained equipment and tools to use on its work by rent, lease, purchase, and subcontract. (See Deposition of Alisha York, at pp. 32-38, 59; Affidavit of Alisha York).

22. During meetings held on July 20, 2010, and July 28, 2010, Don York, Beverly York, Alisha York, and Aaron York communicated to Defendant Donco's employees the intent to form a non-union concrete construction entity. (See, Transcript of July 20, 2010 meeting, Pages 1, 2, 5, 24, 27, 28, 37, 39, 44-48, and 57, attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 2, 3, 11-16, attached hereto as Plaintiffs' Exhibit "F").

**Response:** Disputed. During meetings held on July 20, 2010, Don York, as owner of Defendant Donco, outlined to Defendant Donco's employees several options to address the down-turn in work being experienced by Defendant Donco. Such options included attempts to negotiate with the applicable unions, creation of a non-union company named "Donco Group," for bidding of work for non-prevailing wage jobs, and his wife and daughter's setting up of a separate minority-owned business named "Donco 3 Construction, LLC." (See Ex. D3-1, at pp. 1-2, 5, 44-46; Deposition of Alisha York, at pp. 34-35; Affidavit of Alisha York).

23. During the meetings referred to in Paragraph 22, Defendant Donco's employees were advised that the non-union concrete construction entity referred to in Paragraph 22 would perform substantially the same concrete construction work as that

8

performed by Defendant Donco.  (See, Transcript of July 20, 2010 meeting, Pages 24, 27, 28, 37, 39, 44-48, and 57, attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 2, 3, 5, and 13, attached hereto as Plaintiffs' Exhibit "F").

**Response:**  Disputed.  Don York explained during the meetings that Defendant Donco would bid work on prevailing wage jobs, and that the new company, Donco Group, would bid work on non-prevailing wage jobs.  (See Ex. D3-1, at pp. 1-2, 5, 44-46; Ex. D3-3, at pp. 20-21; Deposition of Alisha York, at pp. 34-35; Affidavit of Alisha York).

24.    During the meetings referred to in Paragraph 22, Defendant Donco's employees were advised that their employment with the non-union concrete construction entity referred to in Paragraph 22 would not result in continued employee fringe benefit contributions to the Plaintiff Funds on their behalf as required by the relevant collective bargaining agreement(s) in effect.  (See, Transcript of July 20, 2010 meeting, Pages 5, 6, 26-28, 37, 39, and 47, attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 3, 5, and 16, attached hereto as Plaintiffs' Exhibit "F").

**Response:**  Admitted.

25.    During the meetings referred to in Paragraph 22, Don York advised the employees of Defendant Donco that a primary factor in the decision to form the non-union concrete construction entity referred to in Paragraph 22 was for competitive purposes; specifically, to increase profits and decrease overhead for Defendant Donco. (See, Transcript of July 20, 2010 meeting, Pages 1, 2, 22, 26-28, 37, 39, 51, and 53,

attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 2, 3, 11-13, and 20, attached hereto as Plaintiffs' Exhibit "F").

**Response:** Disputed. Don York advised the employees of Defendant Donco that, given the down-turn in business being experienced by Defendant Donco at that time, either the unions had to negotiate with Defendant Donco to lower wage and/or benefit rates, or that Don York would have to bid non-prevailing wage jobs by creating and using a new company, Donco Group, which would be non-union. (See Ex. D3-1, at pp. 1-2, 5, 44-46; Affidavit of Alisha York).

26. During the meetings referred to in Paragraph 22, Defendant Donco's employees were advised that working for the non-union concrete construction entity referred to in Paragraph 22 meant that they would be performing carpenter work covered by the collective bargaining agreement(s) in effect, but would do so as a "non-union" employee of the non-union concrete construction entity referred to in Paragraph 22. (See, Transcript of July 20, 2010 meeting, Pages 5, 6, 37, 39, 47, and 48, attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 2, 3, 5, and 16, attached hereto as Plaintiffs' Exhibit "F").

**Response:** Disputed. Such allegation is a legal conclusion rather than a statement of the actual discussions. Further, Don York explained to the employees that the new company, Donco Group, would be non-union. (*See* Ex. D3-1, at pp. 1-2, 5, 44-46; Affidavit of Alisha York).

27. During the meetings referred to in Paragraph 22, the members of the York family repeatedly used the terms "we" and "us" when referring to the formation and/or operation of the non-union concrete construction entity referred to in Paragraph 22 which would perform substantially the same concrete construction work as that

10

performed by Defendant Donco. (See, Transcript of July 20, 2010 meeting, Pages 1, 2, 5, 6, 9, 11-13, 25-28, 37, 39, 40, 44, 49, 50, and 52, attached hereto as Plaintiffs' Exhibit "E"; See, Transcript of July 28, 2010 meeting, Pages 8,, 11, 13, 14, and 16, attached hereto as Plaintiffs' Exhibit "F").

**Response:** Admitted.

28.     Defendant Donco 3 leased approximately 15% of the equipment and tools it needed to perform its concrete construction work from Defendant Donco. (See, Deposition of Alisha York, Page 34: Line 2 through Page 35: Line 18, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Admitted.

29.     Defendant Donco 3 used equipment which was owned by Defendant Donco to perform its concrete construction work under the terms of a lease between Defendants. (See, Leases for Equipment of Defendant Donco to Defendant Donco 3; attached hereto as Plaintiffs' Exhibit "G").

**Response:** Disputed. Defendant Donco 3 did not only use equipment leased from Defendant Donco, but also used equipment purchased by Defendant Donco 3, and leased or rented from entities other than Defendant Donco. (See Deposition of Alisha York, at pp. 32-38, 59; Affidavit of Alisha York).

30.     Under the terms of the arrangement between Defendants referred to in Paragraph 29, Defendant Donco 3 paid Defendant Donco the amount of one dollar per year for its use of trucks and equipment. (See, Leases for Equipment of Defendant Donco to Defendant Donco 3; attached hereto as Plaintiffs' Exhibit "G").

11

**Response:** Disputed. Only some equipment used by Defendant Donco 3 was leased for one dollar per year. (See Deposition of Alisha York, at p. 35; Deposition of Don York, at pp. 68-69; Affidavit of Alisha York).

31.     Defendant Donco 3 used a substantial number of Defendant Donco's carpenter employees to perform concrete construction work on its projects through an agreement made by Defendants wherein Defendant Donco 3 subcontracted the concrete construction work for projects Defendant Donco 3 was awarded to Defendant Donco. (See, Deposition of Alisha York, Page 46: Line 10 through Page 47: Line 19; Page 66: Lines 21-25, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Disputed. For the first two (2) years of its operation, Defendant Donco 3 subcontracted with several companies, including Defendant Donco, to perform the construction work for which Defendant Donco 3 bid and was awarded a contract. (See Deposition of Alisha York, at pp. 40-47; Affidavit of Alisha York).

32.     Aaron York, through his employment with Defendant Donco, served as the primary superintendent in charge of field work for the concrete construction projects referred to in Paragraph 31. (See, Deposition of Aaron York, Page 39: Line 16 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Admitted.

33.     The employees referred to in Paragraph 31 included Aaron York as the primary superintendent in charge of field work for concrete construction projects referred to in Paragraph 31. (See, Deposition of Aaron York, Page 39: Line 16 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. See response to Paragraph 31, above.

12

34.     Defendant Donco performed concrete construction work in the southwest Missouri area.  (See, Deposition of Donald York, Page 14: Line 15 through Page 16: Line 4, attached hereto as Plaintiffs' Exhibit "A").

**Response:**  Admitted.

35.     The concrete construction work referred to in Paragraph 31 performed by Defendant Donco included the pouring of concrete slabs, forming of concrete walls, site work including curbs and sidewalks, and often involved construction of structures such as small retail stores or small commercial buildings.   (See, Deposition of Donald York, Page 16: Line 5 through Page 17: Line 2, attached hereto as Plaintiffs' Exhibit "A").

**Response:**     Disputed.    The majority of Defendant Donco 3's work is on government projects.  (See Deposition of Alisha York, at pp. 31, 42; Affidavit of Alisha York).

36.     As an employee of Defendant Donco, Aaron York was responsible for overseeing operations in the field on all projects being performed by Defendant Donco's carpenter employees.  (See, Deposition of Aaron York, Page 4: Lines 7-10; Page 8: Lines 6-10; Page 9: Line 3 through Page 14: Line 4, attached hereto as Plaintiffs' Exhibit "D").

**Response:**  Admitted.

37.     Aaron York's duties included the hiring and firing field employees and making decisions on projects when issues came up regarding work being performed employees, changes in work to be performed on projects, the quality and accuracy of the work performed by Defendant Donco employees, and any other issues which required a decision regarding concrete construction work performed/to be performed by Defendant Donco employees.    (See, Deposition of Donald York, Page 42: Line 21

13

through Page 43: Line 10; Page 44: Line 3 through Page 45: line 17, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Aaron York, Page 4: Lines 7-10; Page 8: Lines 6-10; Page 9: Line 3 through Page 15: Line 15, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Aaron York testified during the depositions in this case that, while working for Defendant Donco, he was supervised by his father, Don York, who was the owner of the business and made the business decisions, as outlined in Paragraph 38 below. (See Deposition of Aaron York, at pp. 8-9, 12).

38. Aaron York often made the decisions referred to in Paragraph 37 after consulting with Don York but sometimes circumstances caused him to do so without discussing them with Don York. (See, Deposition of Aaron York, Page 8: Lines 6-10; Page 9: Line 3 through Page 14: Line 4, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Admitted.

39. Upon Defendant Donco's cessation of operations, Defendant Donco 3 employed former employees of Defendant Donco. (See, Deposition of Donald York, Page 77: Line 24 through Page 78: Line 14, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Alisha York, Page 80: Line 19 through Page 85: Line 20, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Disputed. The only Kansas City Carpenters Union employee of Defendant Donco who was hired by Defendant Donco 3 immediately following cessation of his employment with Defendant Donco was Aaron York. (See Deposition of Alisha York, at pp. 80-85; Affidavit of Alisha York).

40. Defendant Donco 3 performed the same type of work as the concrete construction work referred to in Paragraph 31-35 in the southwest Missouri area and

14

also performed similar work at Fort Leonard Wood in south central Missouri. (See, Deposition of Alisha York, Page 40: Line 11 through Page 44: Line 11, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Beverly York, Page 10: Lines 10-19, attached hereto as Plaintiffs' Exhibit "C"; See, Deposition of Aaron York, Page 45: Lines 6-12, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Alisha York testified that the primary work of Defendant Donco 3 is different than the primary work of Defendant Donco. (See Deposition of Alisha York, at pp. 32, 68).

41. As an employee of Defendant Donco 3, Aaron York served in a substantially similar role in his overseeing of operations in the field for all of Defendant Donco 3's projects compared to the role he served for Defendant Donco as set forth in Paragraphs 36-38. (See, Deposition of Alisha York, Page 30: Lines 14-15, attached hereto as Plaintiffs' Exhibit "B"; See, Deposition of Aaron York, Page 40: Line 15 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Aaron York's role with Defendant Donco 3 is significantly greater than his previous role at Defendant Donco. (*See* Affidavit of Alisha York).

42. Among other things, Aaron York's role as an employee of Defendant Donco 3, as set forth in Paragraph 41, included him supervising projects and assisting in making decisions regarding Defendant Donco 3's employees' work in the field on concrete construction projects. (See, Deposition of Aaron York, Page 39: Line 16 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Admitted, but with a different supervisor/owner.

43. As an employee of Defendant Donco 3, Aaron York made decisions after consulting with Alisha York but often offered his opinion and expertise to Alisha York

while discussing such decisions. (See, Deposition of Aaron York, Page 40: Line 19 through Page 43: Line 13, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Admitted.

44. Defendants performed the work referred to in Paragraphs 31-35 and Paragraph 40 while employing the same key employee, Aaron York. (See, Deposition of Donald York, Page 42: Line 21 through Page 43: Line 10; and Page 44: Line 3 through Page 45: Line 17, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Alisha York, Page 28: Lines 9-12, attached hereto as Plaintiffs' Exhibit "B").

**Response:** Disputed. See Response to Paragraph 15 above.

45. Defendant Donco held an auction at Glenworth Auction Company in May 2012. (See, Deposition of Donald York, Page 74: Line 20 through Page 75: Line 23, attached hereto as Plaintiffs' Exhibit "A").

**Response:** Admitted.

46. During the auction referred to in Paragraph 45, many assets of Defendant Donco were not sold to third parties. (See, Deposition of Donald York, Page 81: Line 4 through Page 82: Line 8, attached hereto as Plaintiffs' Exhibit "A").

**Response:** Disputed. Most assets of Defendant Donco were sold to third parties. (See Affidavit of Alisha York).

47. Some of Defendant Donco's tools/equipment were bid on and/or purchased by Defendant Donco's employees at the auction referred to in Paragraph 45. (See, Deposition of Donald York, Page 77: Line 24 through Page 80: Line 6, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of David Reid, Page 46: Line 14 through Page 48: Line 17, attached hereto as Plaintiffs' Exhibit "H").

**Response:** Admitted.

16

48.     Defendant Donco employees were instructed to bid on [insert equipment descriptions] on behalf of Defendant Donco and/or Aaron York at the auction referred to in Paragraph 45.  (See, Deposition of Aaron York, Page 46: Line 14 through Page 49: Line 4; Page 114: Line 7 through Page 115: Line 23, attached hereto as Plaintiffs' Exhibit "D"; See, Deposition of David Reid, Page 46: Line 14 through Page 49: Line 4; Page 114: Line 7 through Page 115: Line 23, attached hereto as Plaintiffs' Exhibit "H").

**Response:**  Disputed.  Deposition testimony demonstrates that Don York or Aaron York asked another person to bid for them on only two (2) items at the auction. (See Deposition of David Reid, at pp. 47-49, Plaintiffs' Exhibit H; Deposition of Don York, at pp. 78-80).

49.     Defendant Donco employee Dave Reid won the auction for the item(s) referred to in Paragraph 48, but the item was not paid for by Dave Reid.  (See, Deposition of David Reid, Page 107: Lines 4-13, attached hereto as Plaintiffs' Exhibit "H").

**Response:**  Disputed.  See Response to Paragraph 48 above.

50.     Defendant Donco employee Aaron York purchased [insert equipment descriptions] for himself, individually, at the auction referred to in Paragraph 45. (See, Deposition of Donald York, Page 80: Line 14 through Page 81: Line 1, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Aaron York, Page 17: Lines 20-23; Page 24: Line 6 through Page 27: Line 18, attached hereto as Plaintiffs' Exhibit "D").

**Response:**  Admitted that Aaron York purchased items at the auction for himself, individually.

51.     Don York and/or Aaron York provided equipment of substantial value exceeding $30,000.00 in value (and referred to in Paragraph 49) to Defendant Donco 3

17

for use on its concrete construction projects. (See, Deposition of Donald York, Page 81: Lines 4-22; Page 82: Line 9 through Page 83: Line 16, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Aaron York, Page 19: Lines 4-20; Page 21; Page 25: Line 17 through Page 26: Line 17; Page 29: Line 9 through Page 30: Line 2; Page 31: Line 17 through Page 33: Line 5, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. Equipment belonging to Don York and/or Aaron York personally has been used by Defendant Donco 3 based upon Defendant Donco 3 leasing said equipment. (See Deposition of Alisha York, at pp. 34-35; Deposition of Don York, at pp. 68-69; Affidavit of Alisha York).

52. Don York and/or Aaron York provided the use of the equipment referred to in Paragraph 49 to Defendant Donco 3 free of charge. (See, Deposition of Donald York, Page 81: Lines 4-22; Page 82: Line 9 through Page 83: Line 16, attached hereto as Plaintiffs' Exhibit "A"; See, Deposition of Aaron York, Page 19: Line 4 through Page 20: Line 21, attached hereto as Plaintiffs' Exhibit "D").

**Response:** Disputed. See Response to Paragraph 51 above.

C. **Material Facts Left Out by Plaintiffs' Statement of Undisputed Facts –**

In addition to disputing Plaintiffs' "Statement of Undisputed Facts," Defendant Donco 3 also asserts that Plaintiffs' Statement loosely glosses the facts very broadly, and thereby leaves out many specific material facts relevant to this case, which make it inappropriate for ruling by summary judgment for Plaintiffs. For example:

1. Defendant Donco 3 was specifically formed by Beverly York and Rachel York as a woman-owned minority business, for the specific purpose of bidding governmental contracts as a woman-owned, small business. (*See* Deposition of Alisha York, at pp. 20-22, 40-41; Affidavit of Alisha York).

18

2.    Defendant Donco 3 completed and filed Small Business Self-Certification Forms, certifying their Woman-Owned Small Business (WOSB) status. (*See* Deposition of Alisha York, at pp. 22-23; Affidavit of Alisha York).

3.    At the meetings held by Don York with employees of Defendant Donco, as secretly recorded by an employee and now used by Plaintiffs, it was clearly explained to the employees that Defendant Donco 3 was a woman-owned minority business, and would be separate from Defendant Donco and Donco Group, the new non-union company being considered by Don York. (*See* Exhibit D3-1, at pp. 1-2, 5, 44-46).

4.    Defendant Donco 3 was established with the Missouri Secretary of State as a separate business, and has been operated as its own stand-alone business with separate bank accounts, lines of credit, accounting systems, financial statements, tax returns, insurance policies, business licenses, performance bonds, etc. (*See* Depo. Ex. Donco 3 No. 7). Plaintiffs admit such facts in their Memorandum in Support, at p. 17.

5.    Monies used to fund Defendant Donco 3 were obtained by a loan obtained by Beverly York and Rachel York, and by Beverly York cashing in her personal retirement funds and investing such monies into the business. (*See* Deposition of Alisha York, at pp. 12-14; Deposition of Rachel York, at p. 6; Affidavit of Alisha York).

6.    Defendant Donco 3 obtained tax identification numbers and accounts separate from Defendant Donco. (*See* Deposition of Alisha York, at pp. 25, 27-28; Affidavit of Alisha York). For example, in regard to

19

Unemployment, the Missouri Division of Employment Security Appeals

Tribunal determined after a Hearing:

> **The competent and substantial evidence was that the trade or business of Donco Construction Services, LLC, was not transferred to Donco 3 Construction LLC.** The appellant only acquired minimal assets from Donco Construction, LLC. Additionally, the appellant assume no liabilities of Donco Construction Services, LLC. The evidence also was that the appellant hired a new non-union workforce. **The most that can be said is that the appellant operated a new business for a time at the same location where Donco Construction Services, LLC, operated its business.**
>
> Accordingly, the Appeals Tribunal concludes that Donco 3 Construction LLC shall not stand in the position of Donco Construction Services, LLC, in all respects under the provisions of section 288.110, RSMo. (Emphasis added.)

(*See* Depo. Ex. Donco 3 No. 5).[2]

7.     Defendant Donco 3 filed Forms SF 1413 in regard to its initial projects, clearly showing its subcontracting with other entities, including Defendant Donco, therefore demonstrating the arm's-length nature of the subcontracting. (*See* Affidavit of Alisha York).

8.     At all times Defendant Donco 3 made separate purchases of materials, and separately bid and entered into contracts, from Defendant Donco. (*See* Affidavit of Alisha York).

9.     Defendant Donco 3 has not, at any time, entered into an agreement with the United Brothers of Carpenters and Joiners of America, District Council

---

[2] Defendant Donco 3 notes to the Court and acknowledges that such Finding by the Missouri Division of Employment Security is not binding on this Court, and may not be admitted as substantive evidence at trial. *See* Mo. Rev. Stat. § 288.215. However, such Finding contradicts Plaintiffs' assertion in their Motion that a directly opposite finding is without material dispute.

of Kansas City and Vicinity, nor has said Carpenters Union ever approached Defendant Donco 3 and requested that they enter into such an agreement. (*See* Affidavit of Alisha York).

10. Much of Defendant Donco 3's work is outside the jurisdictional coverage of Defendant Donco's Agreement with the Carpenters Union. (*See* Deposition of Alisha York, at pp. 68-71; Affidavit of Alisha York).

Various other specific, material facts could be outlined, but, since Defendant Donco 3 is only responding to Plaintiffs' Motion for Summary Judgment, and not filing its own cross-motion for summary judgment, Defendant Donco 3 will not take the Court's time to outline all of the various facts which Defendant Donco 3 will assert at trial to demonstrate that Defendant Donco 3 is not an alter ego of Defendant Donco.

**D.     Response to Plaintiffs' Legal Arguments –**

Plaintiffs' move for summary judgment solely on the alter ego issue. In doing so, Plaintiffs appropriately acknowledge, at p. 14 of their Memorandum in Support, that "Plaintiffs have the burden of showing that there is no genuine dispute as to the material fact [sic]." Defendant Donco 3 asserts that Plaintiffs have not, and cannot, meet that burden.

Plaintiffs' Motion asserts alter ego[3] status of Defendant Donco 3 for Defendant Donco. The alter ego test for ERISA cases is outlined and controlled by *Greater Kansas City Laborers' Pension Fund v. Superior General Contractors, Inc.*, 104 F.3d 1050 (8th Cir. 1997), where the court outlines a two-part test.

---

[3]     Plaintiffs' Memorandum in Support, at p. 2, references "alter egos of one another and/or a single entity." However, the single employer doctrine is not relevant to this case. *See Greater Kansas City Laborers' Pension Fund v. Superior General Contractors, Inc.*, 104 F.3d 1050 n.7 (8th Cir. 1997).

The first part of the two-part test is that Plaintiffs must show that Defendant Donco 3 was "controlled by [Defendant Donco] to the extent that it has independent existence in form only." 104 F.3d at 1055. Defendant Donco 3 asserts that, as outlined above, there are various factual disputes which prevent this issue from being ruled for Plaintiffs by a summary judgment motion. Further, Defendant Donco 3 asserts that, for the very same reasons the court in *Superior General Contractors* found there was no alter-ego status,[4] this Court will be requested to find, after trial of the facts, that there is no alter-ego status in this case.[5]

---

[4] In *Superior General Contractors*, the District Court found, and the Eighth Circuit affirmed, the following factual findings (104 F.3d at 1054):

> . . . The district court specifically found that (1) control and management of Superior General and New Bohnert were distinct and separate, because, although Al Bohnert was the majority shareholder in Superior General, he played no role in its operations; (2) the arrangement by which Superior General utilized the accounting department of Old Bohnert was negotiated in an arm's length transaction; (3) separate books were kept for Superior General and New Bohnert which clearly showed their separate operations and employees and (4) although Superior General and New Bohnert did a substantial volume of business with one another, such arrangements were negotiated in arm's length transactions, through a competitive bidding process. (Citation omitted.) . . .

[5] For example, Plaintiffs' reliance on Defendant Donco 3 initially renting its office space from Don and Beverly York, as individuals, or Defendant Donco, is misplaced. Rather, such argument was rejected by the Eighth Circuit in *Trustees of the Graphic Communications International Union Upper Midwest Local 1 M Health and Welfare Plan v. Bjorkedal*, 516 F.3d 719, 729 (8th Cir. 2008):

> . . . There was nothing fraudulent about Bjorkedal and Jacobson owning the buildings individually and leasing them to their wholly-owned corporations. As a corporate matter, this is a common practice, considered wise from a business perspective. (Citation omitted.) . . .

22

As stated by the Eighth Circuit in *Superior General Contractors*, "determination of alter ego status involves a mixed question of law and fact." *Id.* at 1054. Disputes of fact precluding summary judgment on an alter-ego issue was similarly found by the court in *Moore v. Advantage Office Services, Inc.*, 2011 WL 2193848 (D. Minn. 2011) where the court cited and compared *Seipel v. John Heinlein Construction, Inc.*, 2009 WL 1405223 (D. Minn. 2009) by stating (2011 WL 2193848 at 3):

> . . . In *Heinlein Construction*, the two companies used the same office space, with one "renting" the space from the other in exchange for the use of the other company's bookkeeper, and the companies shared equipment and vehicles. But the companies made separate purchases of materials, separately bid and entered into contracts, and had separate bank accounts, insurance policies, and tax returns. *Id.* at 2. . . .

As for the second part of the test, Plaintiffs must prove that Defendant Donco 3 is being "used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Superior General Contractors*, 104 F.3d at 1055. Defendant Donco 3 asserts that notwithstanding Plaintiffs' vague accusations in this regard, Plaintiffs simply have no facts to support such a finding. In a similar case filed by the same Plaintiffs here, the Eighth Circuit reversed summary judgment of an alter-ego finding in an ERISA case, finding that Plaintiffs did not "show the absence of trial worthy issues on the second prong." *See Carpenters District Council of Kansas City Pension Fund v. JNL Construction Co., Inc.*, 596 F.3d 491, 496 (8th Cir. 2010), where the court stated:

> . . . However, **we find the Funds did not produce sufficient evidence to show the absence of trialworthy [sic] issues on the second prong**: whether JNL was used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud; or whether adherence to the corporate fiction sanctioned fraud, promoted injustice, or resulted in an evasion of legal obligations. . . . (Emphasis added.)

That reasoning applies here. Summary judgment for Plaintiffs is clearly not supported.[6]

Even if Plaintiffs could allege such facts, those facts would clearly be disputed by Defendant Donco 3, and therefore are not appropriate for ruling for Plaintiffs on summary judgment. Plaintiffs' Memorandum in Support, at pp. 22-23, make several unsupported and false accusations against Defendants. For example, Plaintiffs state (at pp. 22-23):

> Defendants engaged in this conduct in order to strip Defendant Donco of nearly all of its assets while simultaneously attempting to escape Defendant Donco's obligation to the Plaintiff Funds under the relevant collective bargaining agreement(s). . . .

However, the evidence reflects that Defendant Donco held an auction to sell its assets, raising a net (after fees) amount of $699,710.20 for Defendant Donco to pay creditors, including Plaintiffs. (*See* Deposition of Glen Yutzy, at pp. 10-11). Further, Defendant Donco paid all contributions due to Plaintiffs except for the disputed amount of approximately $2,625.47, which has now been paid by Defendant Donco. (*See* Ex. F-2 to Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment Against Defendant Donco).

Similarly, Plaintiffs state in their Memorandum in Support (at p. 23):

> . . . These recordings make it clear that Don York and/or the York family intended to use Defendant Donco 3, owned by closely-related female family members Beverly York and Rachel York, as a legal mechanism to escape Defendant Donco's legal obligation to the Plaintiff Funds while continuing the family's business of performing concrete construction work in the southwest Missouri area as a non-union outfit.

---

[6]     In fact, Defendant Donco 3 asserts that the significant lack of facts to support Plaintiffs' argument on this issue could result in the Court granting summary judgment to Defendant Donco 3 (as a nonmovant) on its own. *See* Rule 56(f)(1), *Federal Rules of Civil Procedure.*

24

However, Plaintiffs' statement fails to accurately reflect that the non-union company that Don York was referencing during the meetings with employees (as outlined in the recorded statements) was a new company, Donco Group, which was going to be owned by himself, and NOT Defendant Donco 3, a woman-owned minority business being set up by Beverly York and Rachel York. (*See* Ex. D3-1, at pp. 1-2, 5, 44-46).

Most significant in this regard (and disconcerting to the undersigned counsel), is the fact that Plaintiffs' Memorandum in Support makes allegations of subterfuge and fraud against Defendant Donco and Defendant Donco 3, when, in fact, Plaintiffs' counsel has in his possession transcripts from covertly recorded statements which clearly demonstrate Don York's good-faith efforts and intentions to reach a deal with the Carpenters Union, to keep Defendant Donco in business, to comply with Defendant Donco's obligations to Plaintiff Funds under the applicable collective bargaining agreement, and to preserve the jobs of Defendant Donco's employees. For example, in the first meeting with employees on July 20, 2010, Don York stated to Defendant Donco's employees:

> We can't sustain it but we gotta do something different. Our only option that I see doing different, we're gonna have to fire up a non-union company and eliminate some costs. We know guys are union. We're union. I'm union. I got two union retirement plans myself, one in St. Louis and one in Kansas City. Like the whole philosophy of the union, the union won't make concessions and we cannot compete. . . . We have no other alternatives, if we're gonna stay alive and bottomline if we don't stay alive, nobody stays alive that works for us. Hopefully this economy'll turn around in the next year or so, so we can do something different, but we gotta look how we're gonna survive the next six months, the next year. (Ex. D3-1, p. 1).

Three (3) days later, on July 23, 2010, employees of Defendant Donco asked questions of Don York at a job site, and secretly recorded such conversations. During those conversations, Don York stated:

Yeah. I mean, that's all we wanted to be, or to have a way to survive. You know. I mean you guys all go back with us a long ways. (Ex. D3-2, at p. 14).

Right. That's, that's what we're saying, all we want is let's, let's make a deal. Because believe me it's not in our best benefit. Let's say everybody walks off. Do you know what a position we've put ourselves in to survive? But, if you're dying anyway, you might as well roll the dice and take your chance the other way 'cause the system the way it's working now, we're dying. (Ex. D3-2, at p. 15).

We're both (inaudible) on Monday that we all come to agreement on what we're gonna do. (Ex. D3-2, at p. 18).

We fight a battles too and I'll fight for this company and for you know myself too. . . . We try to respect everybody's with us and have the same respect of each other. (Ex. D3-2, at p. 19).

Five (5) days later, at the follow-up meeting with all Defendant Donco employees, Don

York stated:

. . . But they did say they had a big meeting with everybody over these issues and stuff and they would talk to him Tuesday so we're gonna wait and hear back from him Tuesday and what they can do. . . . We've done a lot of talking and a lot of soul searching on how we can make this work. We agree, tell me if I'm stating this wrong, we're gonna keep Donco Construction Services LLC. The prevailing wage jobs. We're gonna work bidding just like we've always worked. . . . We are going to start running a double-breasted company. We're gonna start a non-union division to bid the non-union work so we can be more competitive on our labor costs. We understand if you guys don't wanna work on that side. Let us know. (Ex. D3-3, at p. 2).

So I mean we are trying to work a deal. Totally and completely and we're not trying to run anybody down the road or step on anybody's toes. We just gotta do where we can compete and we can't compete right now on the non-prevailing wage work so[.] (Ex. D3-3, at p. 3).

. . . But like I said we understand if you do, if you don't, that's what we're gonna try to do to keep our business running. We'll keep the Donco Services side a union shop. Now how much work we get? We're gonna keep on bidding everything we see. You know. (Ex. D3-3, at p. 5).

But we're gonna get it caught up here, we ain't beating nobody outta anything. . . . The bottomline we don't want no enemies with anybody.

26

You know we don't want no bad attitudes that's not what this is all about. It's about being able to stay in business.  (Ex. D3-3, at p. 20).

Clearly, Plaintiffs cannot prove subterfuge or fraud in the establishment of Defendant Donco 3.

Finally, this case is accurately summarized by the deposition testimony of Alisha York, when she stated (Deposition of Alisha York, at pp. 105-06):

. . .  We didn't feel like it would be a continuation at all.  We're totally different ownership, totally different business model.  We do things different.  We were not even members of Donco Construction, and so we did not think that – we never thought this would happen.  I can tell you that for sure.

**E.    Conclusion –**

WHEREFORE, Defendant Donco 3 respectfully requests that Plaintiffs' Motion for Summary Judgment for Alter Ego be denied, and for any other relief the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF RICK E. TEMPLE, LLC


By:_____/s/ Rick E. Temple_____
            Rick E. Temple
            Missouri Bar No. 33257

1358 E. Kingsley, Ste. D
Springfield, MO 65804

Telephone:   (417) 877-8988
Facsimile:     (417) 877-8989

Attorney for Defendant
Donco 3 Construction, LLC

DATED:  This 27th day of August, 2015.

27

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **Defendant Donco 3's Suggestions in Opposition to Plaintiffs' Motion for Summary Judgment For Alter Ego** was served upon the following individuals, to-wit:

Paul E. Torlina, Esq.
Arnold, Newbold, Winter & Jackson, P.C.
1125 Grand Blvd., Ste. 1600
Kansas City, MO 64106-2503

Nicole L. Hutson, Esq.
Ellis, Ellis, Hammons & Johnson, P.C.
901 St. Louis St., Ste. 600
Springfield, MO 65806-2505

by electronic notice through the Court's system duly addressed to said individuals, on this 27th day of August, 2015.

_____/s/ Rick E. Temple_____
Rick E. Temple

28